UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Russell and Senior Judge Frank


FELICIA ELIZABETH FEASTER

MEMORANDUM OPINION[*]

v.      Record No. 0140-16-3          PER CURIAM
                                      MAY 24, 2016

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

(Avery B. Cousins, III; Cousins Law Offices, on brief), for
appellant.

(Rachel Errett Figura, Assistant County Attorney; Hallet M.
Culbreth, Guardian *ad litem* for the minor child; Rockingham
County Attorney's Office, on brief), for appellee.


Felicia Elizabeth Feaster (mother) appeals an order terminating her parental rights to her

child, H.M.  Mother argues that the trial court erred in terminating her parental rights to H.M.

because the Harrisonburg Rockingham Social Services District (the Department) "did not provide

her with sufficient time or the reasonable and appropriate services as required under Va. Code

§ 16.1-283(C)(2)."  Upon reviewing the record and briefs of the parties, we summarily affirm the

decision of the trial court pursuant to Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Department had been involved with mother since she entered foster care at age ten. She had been in multiple foster care homes and residential treatment facilities. She was diagnosed with mood disorder and anxiety disorder, and she has a history of marijuana and alcohol abuse. When mother reached the age of eighteen in 2009, she left the foster care system.

In January 2012, mother gave birth to H.M., the child who is the subject of this appeal. Sheldon Mongold is the biological father of H.M. The parents agreed to joint legal custody and shared physical custody. Mother did not have permanent housing, so she resided in motels, with friends, or in shelters. Father also did not have permanent housing and frequently worked out of town. When he was in town, he resided in motels, with friends, or with his parents. In 2012, the Department investigated a supervision concern and told father that the paternal grandparents should not be providing child care due to their physical and mental limitations. The Department remained involved with the family and investigated concerns regarding supervision, exposure to drug use, lack of housing, and medical neglect.

In June 2013, mother gave birth to another child, J.F.[1] J.F. had medical problems that required hospitalization. In July 2013, the Department learned that mother's boyfriend, not H.M.'s father, manufactured and sold methamphetamines. The Department offered services to mother, but she refused the services.

In December 2013, the Department learned that mother was staying at the Valley Mission shelter, where she had received fifteen "write-ups" in seventeen days. Although the shelter required parents to remain with their children at all times, mother repeatedly left H.M. with random people in the shelter.

On May 3, 2014, there was a domestic violence incident between mother and her then boyfriend, not H.M.'s father. As a result, J.F. was removed from mother's custody and placed in

---

[1] H.M.'s father is not the biological father of J.F.

- 2 -

foster care. Father had custody of H.M. at the time, but left the child with his parents when he went out of town to work. The Department opened a supervision investigation and again advised father that the paternal grandparents were not suitable caregivers due to their mental and physical health problems. Father told the Department that he did not have other child care options. The Department paid the processing fee for father to place the child in Harrisonburg-Rockingham Day Care, but father never used those day care services.

In June 2014, the Department learned that the child again was left in the care of the paternal grandparents. Father was working out of town, so mother took the child. On June 18, 2014, mother was asked to leave the domestic violence shelter where she was staying. Mother went to the Department to discuss her plans, but she was unable to provide housing for her and H.M. The Department contacted father, who arranged for mother to stay in a hotel for the night. On June 19, 2014, the Department checked on mother and H.M. Mother had no plans for housing, employment or transportation. The Department could not reach father. Finding no viable options for H.M., the Department removed the child and placed him in foster care.

At the preliminary removal hearing, both parents submitted to drug screens. Mother tested positive for marijuana, and father tested positive for methamphetamines. On July 23, 2014, the Harrisonburg/Rockingham County Juvenile and Domestic Relations District Court (the JDR court) found H.M. to be an abused and/or neglected child. The Department offered mother supervised visitation, but imposed several requirements on her. She was directed to obtain and maintain stable employment, housing, and transportation and to ensure H.M. was able to keep medical appointments. In addition, mother was required to participate in substance abuse treatment and demonstrate a commitment to sobriety, and she had to take parenting classes and partake in a monthly parenting group.

To assist mother in fulfilling these requirements, the Department referred her to Harrisonburg-Rockingham Community Services Board (CSB) for a substance abuse assessment. Although mother signed up for treatment through CSB, she did not complete the program. The Department also referred mother for a psychological assessment, which mother eventually completed even though she missed or was late to numerous appointments. The Department referred mother to a monthly parenting group and parenting classes, but she did not complete them. The Department also referred mother to the Virginia Employment Commission Workforce Center. The Department assisted mother with placement in temporary shelters and recommended that mother register with the housing authority.

On May 1, 2015, the Department filed petitions to terminate father's and mother's parental rights. On August 12, 2015, the JDR court terminated father's and mother's parental rights to H.M.[2] Both parents appealed to the circuit court.

On October 27, 2015, the parties appeared before the circuit court. At the hearing, mother testified that she recently re-enrolled with CSB, but had not started the group sessions yet. She still did not have stable housing. She indicated that she was working two or three days per week. She admitted that she was unable to care for H.M. at the time. After hearing the evidence and argument, the trial court took the matter under advisement. On October 29, 2015, the trial court issued its ruling from the bench and found that it was in the child's best interests to terminate both parents' parental rights pursuant to Code § 16.1-283(C)(2). The trial court entered orders memorializing its rulings. This appeal followed.[3]

---

[2] In June 2015, mother gave birth to another child, C.M. H.M.'s father is not the biological father of C.M. The JDR court entered a preliminary child protective order for C.M. on September 30, 2015.

[3] Father also appealed the circuit court's decision to terminate his parental rights. See Mongold v. Harrisonburg Rockingham Soc. Servs. Dist., Record No. 1796-15-3.

- 4 -

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother argues that the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(2). Mother contends the Department failed to allow her sufficient time to comply with the Department's requirements and did not provide her with adequate services to remedy the situation that led to the child being placed in foster care.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Mother failed to obtain stable housing and has a history of substance abuse. The Department assisted her in finding temporary shelters, but mother asserts that the Department should have done more for her, such as contacting and securing public housing for her. Mother

also acknowledges that the Department instructed her to enroll at CSB for drug counseling, but contends the Department should have referred her to more comprehensive drug rehabilitation services.

Despite mother's arguments, the evidence proved that the Department offered mother numerous services. Mother did not participate in or complete many of the recommended services. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

When mother initially completed the intake at CSB in November 2014, a case manager was assigned to assist her. Her case manager could have helped with finding housing, filling out housing applications, and completing employment applications. Mother's CSB case was closed, however, for non-compliance and failure to attend appointments. At the final hearing, mother testified that she recently re-enrolled at CSB.

In addition, in June 2015, the Department assisted mother in securing a place at Mercy House, a shelter that assists residents with finding employment, saving money for housing, and obtaining financial assistance for housing. Mother was evicted from Mercy House in September 2015 after she and her then boyfriend, not H.M.'s father, had an altercation.

The Department also referred mother to Dr. Joann Grayson for a psychological and parenting evaluation. Although mother completed the psychological assessment, Dr. Grayson determined that there would be "significant challenges" in working with mother because mother was "'tired' of therapy and does not want to engage with providers." Dr. Grayson noted that mother had "considerable difficulty" in keeping appointments and lacked initiative and skills to plan ahead.

In addition, the Department referred mother to parenting classes, which she did not complete. She did not attend the recommended monthly parenting group. She did not follow through with individual counseling.

At the circuit court hearing in October 2015, mother admitted she was not in a position to have custody of the child at that time, and she asked for additional time to improve her situation. By this time, however, H.M. had been in foster care for sixteen months. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the totality of the circumstances, the trial court did not err in finding that mother was unwilling or unable to remedy substantially, within a twelve-month period, the conditions that resulted in H.M.'s foster care placement, and therefore did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.